IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY PILLING,<br><br>         Plaintiff,<br><br>     v.<br><br>BAY AREA RAPID TRANSIT, ALAMEDA PARK STREET BICYCLES, INC., a California Corporation dba ALAMEDA BICYCLE, and DOES 1-10,<br><br>         Defendants. | Case No.: C-12-02186 JCS<br><br>**ORDER DENYING MOTION TO DISMISS** |

**I.    INTRODUCTION**

Plaintiff Gregory Pilling ("Plaintiff") brings this action against Defendants Bay Area Rapid Transit ("BART") and Alameda Park Street Bicycles dba Alameda Bicycle ("Alameda Bicycle") (collectively, "Defendants"), alleging discrimination based on his disability. Presently before the Court is Defendants' Motion to Dismiss ("Motion") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court finds that the Motion is suitable for determination without oral

argument pursuant to Civil Local Rule 71(b).  Accordingly, the hearing on the Motion set for July 27, 2012 at 9:30 a.m. is VACATED.  For the reasons stated below, the Motion is DENIED.[1]

## II. BACKGROUND

### A. The Complaint

Plaintiff has had cancer and treatment for cancer and, as a result, had to undergo a colostomy. Complaint ¶ 1.  Because of the colostomy, it takes Plaintiff more time than it takes non-disabled people to use a public restroom.  *Id.*  Plaintiff worked for the City of Berkeley through a Social Security Disability Insurance "Ticket to Work" program as a street-sweeping foreman.  *Id.* at ¶ 2. Beginning around April 5, 2011, Plaintiff's commute to work consisted of riding his bicycle to BART, taking his bicycle on BART to the Downtown Berkeley BART station, storing his bicycle at the Berkeley Bike Station ("Bike Station"), which is adjacent to the Downtown Berkeley BART station, and then using the bathroom at the Bike Station, where he was a member.  *Id.*  Due to Plaintiff's disability, he needed to use the bathroom at the Bike Station for approximately 12 to 18 minutes per day.[2]  *Id.*  However, the Bike Station—a joint venture between BART and Alameda Bicycle—has an inflexible rule that nobody can use the restroom for more than 10 minutes at a time. *Id.*

Defendants objected to Plaintiff's use of the bathroom for longer than 10 minutes.  *Id.* at ¶ 20.  Defendants kept records of how many times Plaintiff exceeded the ten minute rule and "repeatedly harassed him," warning him on at least five occasions that he was not to use the restroom for more than ten minutes.  *Id.*  Plaintiff repeatedly requested, verbally and in writing, that he be allowed a few extra minutes to use the restroom and that this extra time was on account of his being a person with a disability.  *Id.* at ¶ 21.  Plaintiff noted that he normally used the restroom at 5:30 in the morning, when nobody else was around to be burdened or inconvenienced.  *Id.*

---

[1] The parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).

[2] As a result of his colostomy, Plaintiff cannot eliminate waste from his body in a normal manner but is dependent upon the use of a colostomy apparatus that allows him to eliminate waste through a surgical opening in his abdomen.  *Id.* at ¶ 16; Opposition at 3.

2

Nonetheless, on or about September 9, 2011, Defendants revoked Plaintiff's Bike Station membership due to his repeated violation of the ten minute rule. *Id.* at ¶ 22. Plaintiff's request to reinstate his membership with a "reasonable accommodation" that he be allowed to use the bathroom for longer than ten minutes was denied. *Id.* at ¶ 23. Because Plaintiff could no longer use the Bike Station to store his bicycle or use its restroom, he could no longer commute to work, causing him to lose his "Ticket to Work" job with the City of Berkeley. *Id.* at ¶ 24.

On the basis of the factual allegations summarized above, Plaintiff asserts the following six causes of action:

(1) <u>Violation of Title II of the Americans with Disabilities Act of 1990 ("ADA")</u>: Plaintiff alleges that Defendant BART, a public entity, discriminated against him, an individual with a disability, in contravention of 42 U.S.C. § 12132. *Id.* at ¶¶ 28-29. Plaintiff claims that BART has failed in its responsibilities under Title II of the ADA to provide its services, programs, and activities in a full and equal manner to disabled persons as described above. *Id.* at ¶ 30. This includes the failure to ensure that the public facilities are accessible to disabled persons and the failure to modify its programs, services, and activities to make them accessible to disabled persons, including Plaintiff. *Id.* Plaintiff seeks damages, attorney's fees, and injunctive relief. *Id.* at ¶¶ 31-33. Plaintiff requests an injunction requiring that Defendant BART "take prompt action to modify aforementioned policies and public facilities to render them accessible to and usable by Plaintiff," and other physically disabled persons. *Id.* at ¶ 33.

(2) <u>Violation of § 504 of the Rehabilitation Act of 1973</u>: Plaintiff claims that BART's actions also violated § 504 of the Rehabilitation Act and seeks damages, attorney's fees and injunctive relief for BART's violation. *Id.* at ¶¶ 34-38.

(3) <u>Violation of Title III of the ADA</u>: Plaintiff alleges that Alameda Bicycle, as a private entity, violated Title III of the ADA by discriminating against Plaintiff because of his disability. *Id.* at ¶¶ 42-43 (citing 42 U.S.C. § 12182). Plaintiff claims that the Bike Station is a "public accommodation," that not only operates as a bike storage facility, but as a place that sells bike accessories and rents bicycles. *Id.* at ¶ 42. Plaintiff states that his requested accommodation was at

3

1  all times "readily achievable." *Id.* at ¶ 44.  Plaintiff seeks damages and injunctive relief for Alameda

2  Bicycle's violation of Title III.  *Id.* at ¶ 47.

3        (4) <u>Violation of the Disabled Persons Act ("DPA"), Cal. Civ. Code §§ 54 *et seq.*</u>:  Plaintiff

4  alleges that Defendants' violated the DPA because 1) their actions and omissions constitute a denial

5  of access and use of public facilities by physically disabled persons; 2) Defendants violated Cal.

6  Gov. Code §§ 4450 *et seq.*, which constitutes a violation of Cal. Civ. Code §§ 54 & 54.1; 3) a

7  violation of the ADA constitutes a violation of Cal. Civ. Code §§ 54(c) & 54.1(d).  *Id.* at ¶¶ 52-53.

8  Plaintiff seeks damages, attorney's fees and costs, and injunctive relief.  *Id.* at ¶ 56.

9        (5) <u>Violation of the Unruh Act, Cal. Civ. Code §§ 51 *et seq.*</u>:  Plaintiff claims that

10  Defendants' denial of access and use of public facilities discriminates against Plaintiff due to his

11  disability and therefore violates Cal. Civ. Code §§ 51 and 52.  *Id.* at ¶ 60.  Plaintiff also claims that

12  because Defendants violated the ADA, they also violated Cal. Civ. Code § 51(f).  *Id.* at ¶ 61.

13        (6) <u>Violation of Cal. Gov. Code § 11135</u>:  Plaintiff alleges that BART has failed to make their

14  state-funded programs, services, and activities readily accessible to and useable by disabled persons

15  in violation of Cal. Gov. Code § 11135.  *Id.* at ¶¶ 65-66.

16  **B.**    **The Motion**

17  Defendants Motion seeks to dismiss Plaintiff's claims 1-5.[3]  Regarding Plaintiff's first and

18  third claims, Defendants contend that Plaintiff has failed to allege that he is disabled within the

19  meaning of the ADA.  Motion at 4.  Defendants contend that Plaintiff is not "*substantially* limited in

20  one or more major life activities."  *Id.* (emphasis original) (citing 42 U.S.C. § 12102(2)(A)).

21  Defendants argue that Plaintiff's need to use the restroom approximately 2 to 8 minutes more than

22  allowed by the bicycle parking facility fails to establish a "substantial" limitation of any major life

23  activity.  *Id.* at 4-5.

24  Even if Plaintiff is disabled within the meaning of the ADA, Defendants assert that Plaintiff's

25  claims fail because, according to Department of Transportation ("DOT") regulations implementing

26  the ADA, Defendants are under no obligation to make "reasonable modification" of its rules or

---

[3] Defendants' Motion does not mention Plaintiff's sixth cause of action against BART for violation of Cal. Gov. Code § 11135.  In addition, the Court finds no apparent basis warranting dismissal of this claim.

1  policies to address and accommodate the specific needs of a disabled person. *Id.* at 5 (citing *Boose*
2  *v. Tri-County Metro. Transp. District of Oregon*, 587 F.3d 997 (9th Cir. 2009); *Melton v. Dallas*
3  *Area Rapid Transit*, 391 F.3d 669, 675 (5th Cir. 2004)). Defendants contend that the "reasonable
4  modification" requirement contained in a Department of Justice ("DOJ") regulation does not apply.
5  *Id.*[4]

6  Defendants next contend that Plaintiff's Complaint fails to state a claim under California law.
7  *Id.* at 6. First, Defendants assert that there is no claim under the DPA because "the DPA guarantees
8  only *physical* access to public places; it does not require modification of policies or rules to
9  accommodate a person with a disability." *Id.* at 7 (citing *Turner v. Ass'n of Am. Med. Colleges*, 167
10 Cal. App. 4th 1401, 1412-13 (2008)). Defendants contend that Plaintiff simply seeks "more time
11 than that allowed to other members of the public" to use the facility,[5] which is not grounds for a
12 DPA claim. *Id.*

13 Finally, Defendants argue that Plaintiff fails to state a claim under the Unruh Act. *Id.* at 7-8.
14 Defendants contend that the Unruh Act is not violated where a rule is neutral on its face. *Id.* (citing
15 *Turner*, 167 Cal. App. 4th at 1407). "There can be no question that the [ten] minute rule applies
16 equally to all members who use the bicycle parking facility and thus, no claim for relief is stated
17 under the Unruh Act." *Id.* at 8. While Defendants acknowledge that a violation of the ADA
18 constitutes a violation of the Unruh Act, *id.* (citing Cal. Civ. Code § 51(f)), Plaintiff states no claim
19 for relief under the Unruh Act "because he is not 'disabled' within the meaning of the ADA." *Id.*

---

[4] Defendants also contend that because the same analysis is applied to Plaintiff's Rehabilitation Act claim as is applied to Plaintiff's ADA claims, the Rehabilitation Act claim fails for the same reason as the ADA claims. *Id.* at 6 (citing *Melton*, 391 F.3d at 676).

[5] Defendants also provide specific details of the ten minute rule complained of by Plaintiff. *Id.* at 4 n.2. Defendants state that the ten minute rule applies to a member's entire time in the bike parking facility, which would include a member's time in the restroom. *Id.* The ten minute time period begins when a member enters the parking facility and, pursuant to an electronic lock software program, a silent alarm is triggered when a member fails to exit the parking facility within the ten minute window. *Id.* When the alarm goes off, the Alameda Bicycle employee on duty at the time is required to check a security camera monitor "to ensure that there is no theft or other criminal activity occurring within the parking facility." *Id.* Defendants assert that Plaintiff's request to modify the system, "although on its face a nominal one, is difficult to implement without customization of the operating software for [P]laintiff." *Id.*

5

In response, Plaintiff rejects Defendants' contention that he is not disabled. Plaintiff's Opposition to Defendants' Motion to Dismiss ("Opposition"), 4. Plaintiff argues that the ADA, as amended in 2008, defines a disability, with respect to an individual, as "a physical or mental impairment that substantially limits one or more major life activities of such an individual." *Id.* (quoting 42 U.S.C. § 12102(1)(A)). Plaintiff contends that, due to the removal of a large portion of his bowel, he suffers from a loss of "major life activity" as defined by the statute, including "caring for oneself" and "eating," as well as the operation of major bodily functions, such as "digesti[ve]" and "bowel." *Id.* at 4-5 (citing 42 U.S.C. §§ 12102(2)(A) and 12102(2)(B)). In any event, Plaintiff asserts that determining whether he is disabled pursuant to the ADA is improper on a motion to dismiss and should be reserved for a motion or a trial based on submitted evidentiary facts. *Id.* at 5. Plaintiff also asserts that he is disabled under California law, which, unlike the ADA, does not require a showing of "substantial" limitation. *Id.* at 5-6 (citing Cal. Gov. Code § 12926).

Plaintiff next argues that, contrary to Defendants' contentions, DOT regulations do not control here. *Id.* at 6-7. Plaintiff asserts that the cases cited by Defendants have no bearing on this case because their holdings, which limited the application of DOJ regulations in favor of DOT regulations, were made in the context of challenges to paratransit service. *Id.* (citing *Boose*, 587 F.3d at 1001; *Melton*, 391 F.3d at 669). Plaintiff seeks no enhancement of paratransit services and therefore *Boose* and *Melton* are inapposite. *Id.* at 7. Even if DOT regulations apply, Plaintiff argues, Defendants have not put forth any regulation "purporting to allow them to discriminate against the disabled in bathroom facilities." *Id.* Plaintiff contends that without such a regulation, "the default is that the ADA and other federal laws apply to their treatment of Pilling." *Id.* Finally, Plaintiff appears to question whether DOT regulations apply given that the Bike Station is not clearly a "transportation facility" as defined in 49 C.F.R. 37.3. *Id.*

Regarding his state law claims, Plaintiff asserts that Defendants misread *Turner*, which was limited to whether the DPA or the Unruh Act required performance-related accommodations to test-takers with learning disabilities. *Id.* at 8 (citing *Turner*, 67 Cal. App. 4th at 1412). Here, Plaintiff argues that he "was physically denied access to . . . the Bike Station," and therefore *Turner* is not on point. *Id.* at 9. Plaintiff further argues that *Hankins v. El Torito Restaurants*, 63 Cal. App. 4th 510

6

(1998), is directly on point and stands for the proposition that a facially neutral policy denying access to a particular restroom can result in unlawful discrimination based on a disability. *Id.*

In reply, Defendants concede that elimination of waste is a major life activity, but they assert that the need to take a "few minutes more than the average person to do so" is not a substantial limitation of that major life activity, and consequently, Plaintiff is not disabled under the ADA. Defendants' Reply in Support of Motion to Dismiss ("Reply"), 2. Defendants also reject Plaintiff's argument that the DOJ's "reasonable modification" requirement applies to this case; rather Defendants contend that *Boose* and *Melton* are not limited to the paratransit context and require application of DOT regulations in place of DOJ regulations. *Id.* at 3. Defendants argue that DOT regulations include all transportation facilities, not just paratransit services. *Id.* (citing 49 C.F.R. § 37.9).

## III. ANALYSIS

### A. Legal Standard Under Rule 12(b)(6)

A complaint may be dismissed for failure to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes "all allegations of material fact as true and construe(s) them in the lights most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). The

factual allegations must be definite enough to "raise a right to relief above the speculative level." *Id*. at 1965.  However, a complaint does not need detailed factual allegations to survive dismissal. *Id*. at 1964.  Rather, a complaint need only include enough facts to state a claim that is "plausible on its face." *Id*. at 1974.  That is, the pleadings must contain factual allegations "plausibly suggesting (not merely consistent with)" a right to relief. *Id*. at 1965 (noting that this requirement is consistent with Fed. R. Civ. P. 8(a)(2), which requires that the pleadings demonstrate that "the pleader is entitled to relief").

### B. Whether Plaintiff has Stated a Claim under the Rehabilitation Act and Title II of the ADA

#### 1. Background Law

Plaintiff alleges a claim under Title II of the ADA, which covers discrimination in the provision of public services. *See* 42 U.S.C. §§ 12131, *et seq*.  Title II is divided into two parts: Part A covers public services generally, 42 U.S.C. §§ 12131, *et seq*.;[6] Part B applies specifically and only to public transportation provided by public entities, 42 U.S.C. §§ 12141, *et seq*.  In order to state a claim under Title II of the ADA and the Rehabilitation Act, a plaintiff must allege that: (1) she is an individual with a disability under the Act; (2) she is "otherwise qualified" to participate in or receive the benefit of the entity's services, programs, or activities, i.e., she meets the essential eligibility requirements of the entity, with or without reasonable accommodation; (3) she was either excluded from participation in or denied the benefits of the entity's services, programs, or activities, or was otherwise discriminated against by the public entity solely by reason of her disability; and (4) the entity is a public entity (for the ADA claim) or receives federal financial assistance (for the Rehabilitation Act claim).[7] *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999).

---

[6] Title II, Part A provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

[7] The Ninth Circuit has explained that "[b]ecause the ADA was modeled on section 504 of the Rehabilitation Act, 'courts have applied the same analysis to claims brought under both statutes.'" *Boose*, 587 F.3d at 1001 n.5 (quoting *Zukle*, 166 F.3d at 1045 n.11).  Thus the focus is on whether BART violated the ADA.

8

"The ADA shall be construed broadly in order to effectively implement the ADA's fundamental purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *D.K. ex rel. G.M. v. Solano County Office of Educ.*, 667 F. Supp. 2d 1184, 1190 (E.D. Cal. 2009) (citing *Barden v. City of Sacramento*, 292 F.3d 1073 (9th Cir. 2002)).

Public entities generally are required by DOJ regulation 28 C.F.R. § 35.130(b)(7) to make reasonable modifications to avoid discrimination on the basis of disability:

> A public entity shall make reasonable modification in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

Part B, however, is explicitly excepted from the reasonable modifications requirement:

> To the extent that public transportation services, programs, and activities of public entities are covered by subtitle B of title II of the ADA (42 U.S.C. 12141), they are not subject to the requirements of this part.

28 C.F.R. § 35.102(b).

Additionally, the implementing statute for 28 C.F.R. § 35.130(b)(7) states that DOJ "regulations shall not include any matter within the scope of the authority of the Secretary of Transportation under section 12143, 12149, or 12164 of this title." 42 U.S.C. § 12134(a). At the same time, the DOT regulations acknowledge that public entities that provide transportation services "may be subject to ADA regulations of the Department of Justice" and that the DOT regulations shall be interpreted to be consistent with "applicable Department of Justice regulations." 49 C.F.R. § 37.21(c).

The Ninth Circuit has held that a public transit entity is not required to provide "reasonable modifications" of its paratransit service since such modifications fall within the scope of the Secretary of Transportation's authority to issue regulations concerning paratransit service under Part B. *Boose*, 587 F.3d at 1001-02 (citing, *inter alia*, 42 U.S.C. § 12134(a)). The Fifth and Second Circuits have reached similar conclusions. *See Melton*, 391 F.3d at 675 (holding that a reasonable modification that "relates specifically to the operation of [a paratransit system's] service" is "exempt

9

1  from the Attorney General's regulations in 28 C.F.R. part 35"); *Abrahams v. MTA Long Island Bus*,
2  644 F.3d 110, 121 (2nd Cir. 2011) (holding that the reasonable modification provision does not
3  apply to paratransit services that fall under the Secretary of Transportation's authority).
4      Outside of the paratransit context, the Ninth Circuit has applied the DOJ's reasonable
5  modification regulation to a public transit system's activities. In *Weinreich v. L.A. County Metro.*
6  *Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997), the plaintiff challenged a public transit system's
7  policy requiring disabled participants in its reduced fare program to provide updated medical
8  information every three years recertifying that they are disabled. Plaintiff contended that his
9  financial circumstances did not allow him to meet this eligibility requirement. *Id.* The court
10 ultimately ruled against plaintiff, finding that a reasonable modification is only required where the
11 modification is necessary to avoid discrimination on the basis of disability and the discrimination
12 alleged by plaintiff was due to his indigence, not his disability. *Id.* at 979.

### 2. Application of Law to Facts

The key dispute between the parties is whether the DOJ's "reasonable modification" requirement applies to BART's rule that a Bike Station member must exit the Bike Station within ten minutes of entering.[8] Defendants argue that, as with the provision of paratransit services in *Boose*,

---

[8] The parties also dispute whether Plaintiff is disabled within the meaning of the ADA. The Court finds that Plaintiff has adequately alleged that he is disabled under the ADA and therefore Plaintiff's Complaint will not be dismissed on this basis. 42 U.S.C § 12102 defines "disability" under the ADA as, *inter alia,* "a physical or mental impairment that substantially limits one or more major life activities." Defendants do not dispute that elimination of waste is a "major life activity." Reply at 2; *see also* 42 U.S.C § 12102(2)(B) (listing the operation of the "digestive" and "bowel" as a major bodily function that qualifies as a major life activity). Rather, Defendants contend that Plaintiff's colostomy—which removed a portion of his colon and now requires Plaintiff to eliminate his waste through a surgical opening in his abdomen with the assistance of a colostomy apparatus—does not "substantially limit" his ability to eliminate waste since it only takes him a few minutes longer than the normal person to use the restroom. However, it is apparent that Plaintiff's colostomy severely limits the operation of his bowel and digestive functions—portions of these systems were removed from his body and he now eliminates waste through an opening in his abdomen. That it takes Plaintiff "a few minutes longer than the average person" to use the restroom is not dispositive of whether Plaintiff is disabled. If that were the case, a wheelchair user that needed just a few inches more space than the average person to pass through a doorway would not be considered disabled. The Court finds that Plaintiff has adequately alleged that his colostomy substantially limits his bowel and digestive functions.

10

*Melton*, and *Abrahams*, DOT regulations apply here since the Bike Station is a transportation facility covered by those regulations. The Court disagrees.

Although the reasoning and more general holdings of the Ninth Circuit's decision in *Boose* may certainly apply outside the paratransit context, the Court does not find that the outcome in *Boose* is dispositive here. In *Boose*, as well as in *Melton* and *Abrahams*, the court was dealing with 42 U.S.C. § 12143, which sets out a comprehensive scheme detailing the requirements for compliance with the ADA in the provision of paratransit service. The court in *Boose* found that plaintiff's requested modification—scheduling her paratransit rides in only taxi sedans, not buses—was not subject to DOJ regulations because it was "covered"[9] by Section 12143 and "within the scope of authority" of the Secretary of Transportation pursuant to the Secretary's authority to set paratransit service criteria. *Boose*, 587 F.3d at 1002-03 (citing 28 C.F.R. § 35.102(b); 42 U.S.C. § 12134(a)). Unlike in *Boose*, however, applying the reasonable modification requirement here would not usurp DOT authority. Defendants have pointed to no ADA provision—let alone a comprehensive scheme—authorizing the Secretary of Transportation to issue regulations relating to membership rules of a transportation facility.[10]

Defendants appear to suggest that 49 C.F.R. § 37.9 signals DOT's authority to issue such regulations. 49 C.F.R. § 37.9 provides that "a transportation facility shall be considered to be readily accessible to and usable by individuals with disabilities if it meets the requirements of this part and the requirements set forth in Appendices B and D to 36 CFR part 1191, which apply to buildings and facilities covered by the [ADA]." The regulation goes on to discuss facility alterations and

---

[9] The court rejected a narrow reading of "covered" to mean "specifically mentioned" and instead found the term consistent with its enabling statute, "which speaks more broadly of *the scope of the authority* of the Secretary of Transportation." *Boose*, 587 F.3d at 1003 (citing 42 U.S.C. § 12134(a)) (internal quotation marks omitted) (emphasis original). "The word 'cover' is defined, *inter alia*, as 'to have width or scope enough to include or embrace.'" *Id.* (quoting Webster's Third New Int'l Dictionary 524 (1986)).

[10] The Court notes that Plaintiff's speculation that "facility" does not include the Bike Station is not supported by any authority. Rather, both the DOJ and DOT regulations include "parking lots" within the definition of facility. *See* 28 C.F.R. § 35.104; 49 C.F.R. § 37.3. The parties do not dispute that the Bike Station is a parking station for bicycles. That a portion of the Bike Station also rents and sells merchandise does not appear to be relevant to this case or to the Bike Station's provision of bike parking services.

11

construction, and Appendices B and D to 36 C.F.R. § 1191 detail precise spatial configurations for facilities and vehicles. It does not speak to rules and policies of a transit agency. Turning to the statute, Section 12146, entitled "New facilities," seemingly provides the relevant authority to issue the above regulation. That section states:

> For purposes of section 12132 of this title and section 794 of Title 29, it shall be considered discrimination for a public entity to construct a new facility to be used in the provision of designated public transportation services unless such facility is readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.

42 U.S.C. § 12146. However, the issue here is not whether the Bike Station was constructed such that its physical dimensions made it readily accessible and usable by individuals with disabilities. Rather, Plaintiff alleges that the Bike Station's rule that a member may remain in the station for only ten minutes discriminates against him due to his disability. In the absence of DOT authority to regulate such rules, the Court finds that DOJ regulations, including the requirement of reasonable modifications, are applicable.[11]

*Weinreich*, discussed above, provides support for the Court's conclusion. There, the Ninth Circuit applied the reasonable modification regulation to a public transit entity's policy of having disabled riders submit medical information every three years in order to qualify for reduced-fare transit. *Weinreich*, 114 F.3d at 978. While it does not appear that the transit agency in *Weinreich* argued for application of DOT regulations, the court in *Boose* nonetheless distinguished *Weinreich*. The *Boose* court rejected the plaintiff's argument that *Weinreich* had already decided whether DOJ's reasonable modification regulation applied to challenges to paratransit service, reasoning that

---

[11] Although not mentioned by the parties, the Court notes that 49 C.F.R. § 37.167, entitled "Other service requirements," lists particular services that must be provided or permitted, such as announcement of particular transit stops, service animals, accessible transit information, adequate time to allow individuals with disabilities to complete boarding and disembarking from the vehicle, and asking non-disabled and non-elderly passengers to relinquish designated priority seating. While it is not clear what provision in the ADA authorizes the DOT to make these requirements, the similarity among all the requirements suggests that the DOT obtains authority to regulate activities relating directly to transportation. Without more guidance from the enabling statutes in the ADA, the Court cannot conclude that Defendants' ten minute rule would fall under the same authority or any other authority.

"because *Weinreich* did not involve a paratransit service, but rather a disabled rider's eligibility for a reduced-fare program for fixed route bus service, it is inapposite." *Boose*, 587 F.3d at 1000 n.4. The Court finds that Defendants' ten minute rule is more akin to the transit agency's challenged eligibility requirements in *Weinreich* than it is to the comprehensive statutory scheme directly governing paratransit service challenged in *Boose*. Accordingly, Part A's general requirements of public transit agencies, including provision of reasonable modifications, applies to Defendants' ten minute rule.[12] Defendants' Motion is denied as to Plaintiff's ADA Title II claim against BART.

### C. Whether Plaintiff has Stated a Claim Under Title III of the ADA

#### 1. Background Law

Title III of the ADA prohibits discrimination against the disabled in the full and equal enjoyment of public accommodations, 42 U.S.C. § 12182(a), and public transportation services, § 12184(a). The general prohibitions are supplemented by various, more specific requirements:

> Entities that provide public accommodations or public transportation: (1) may not impose "eligibility criteria" that tend to screen out disabled individuals, §§ 12182(b)(2)(A)(i), 12184(b)(1); (2) must make "reasonable modifications in polices, practices, or procedures, when such modifications are necessary" to provide disabled individuals full and equal enjoyment, §§ 12182(b)(2)(A)(ii), 12184(b)(2)(A); (3) must provide auxiliary aids and services to disabled individuals, §§ 12182(b)(2)(A)(iii), 12184(b)(2)(B); and (4) must remove architectural and structural barriers, or if barrier removal is not readily achievable, must ensure equal access for the disabled through alternative methods, §§ 12182(b)(2)(A)(iv)-(v), 12184(b)(2)(C).

*Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 128-29 (2005).

Section 12184(a) prohibits discrimination by a private entity that provides "specified public transportation services," is "primarily engaged in the business of transporting people," and whose

---

[12] The Court notes that a contrary interpretation may leave a vacuum in the regulations. To begin, that public transportation services, programs, and activities governed by Part B are exempted from the reasonable modification requirement does not provide a blanket exemption for all public transit agency activity; rather, Congress specifically limited the exemption to those activities for which the Transportation Secretary is given authority to regulate. Paratransit service is clearly governed by Part B; rules regarding membership requirements for a bike parking facility are not clearly governed, or "within the scope" of the Secretary's authority. Because Defendants have failed to identify DOT authority to regulate these kinds of rules, the Court is not convinced that DOT, if it wished, could fill the gaps left by the preclusion of DOJ regulations. The Court is unwilling to find that certain public transit agencies' policies, such as BART's ten minute rule, are potentially exempt from all regulation under the ADA.

13

operations affect commerce. "Specified public transportation" is defined as "transportation by bus, rail, or any other conveyance (other than aircraft) provided by a private entity to the general public, with general or special service (including charter service) on a regular and continuing basis." 49 C.F.R. § 37.3. In addition to the statutory requirements, the Secretary of Transportation has promulgated regulations specifically requiring private entities to "compl[y] with the requirements of the rules of the Department of Justice concerning eligibility criteria, making reasonable modifications, providing auxiliary aids and services, and removing barriers ( 28 C.F.R. §§ 36.301–306)." 49 C.F.R. § 37.5(f).

### 2. Application of Law to Facts

Defendants' briefing on this Motion does not differentiate between Plaintiff's Title II and Title III claims; Defendants argue both claims should be dismissed because DOJ's reasonable modification requirement does not apply to Defendants' actions. However, as set forth above, private entities—whether they are providing public accommodations or public transportation services—are required to make reasonable modifications. *See* 42 U.S.C. §§ 12182(b)(2)(A)(ii), 12184(b)(2)(A); 49 C.F.R. § 37.5(f). Defendants make no other argument as to why Plaintiff's Title III claim against Alameda Bicycle should be dismissed. Accordingly, Defendants' Motion is denied as to Plaintiff's Title III claim.[13]

### D. Whether Plaintiff has Stated a Claim Under the California Disabled Persons Act, Cal. Civ. Code §§ 54 *et seq.*

### 1. Background Law

California's Disabled Persons Act provides that "[i]ndividuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and other public places." Cal. Civ. Code § 54(a). It also guarantees "[i]ndividuals with disabilities . . . full and equal access, as other members of the general

---

[13] Although not addressed by the parties, the Court notes that it is not entirely clear whether Alameda Bicycle's requirement to provide reasonable modifications attaches because it is providing a public accommodation or because it is providing public transportation services. Because the outcome is the same for the purposes of this Motion, the Court does not address the issue.

14

1  public, to accommodations, advantages, facilities, medical facilities, including hospitals ... and other
2  places to which the general public is invited, subject only to the conditions and limitations
3  established by law, or state or federal regulation, and applicable alike to all persons." *Id.* § 54.1.
4  The statute creates a right of action against anyone who "denies or interferes with admittance to or
5  enjoyment of the public facilities" or "otherwise interferes with the rights of an individual with a
6  disability." *Id.* § 54.3. A violation of the ADA also constitutes a violation of the DPA. Cal. Civ.
7  Code § 54.1(d).

### 2. Application of Law to Facts

Defendants argue that Plaintiff's DPA claim should be dismissed because the focus of the DPA is "physical access," and Plaintiff was provided physical access to the Bike Station. The Court, however, need not decide the issue since a DPA claim can also be derivative of an ADA claim. *See* Cal. Civ. Code § 54.1(d). Accordingly, Plaintiff has stated a claim under the DPA.

### E. Whether Plaintiff has Stated a Claim Under the Unruh Act, Cal. Civ. Code §§ 51 *et seq.*

#### 1. Background Law

The Unruh Act prohibits discrimination based on a person's membership in a particular group: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code, § 51(b). "Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to [the Unruh Act]" is liable for damages and penalties. *Id.* § 52(a).

Despite its broad application, the Unruh Act does not extend to practices and policies that apply equally to all persons: "This section shall not be construed to confer any right or privilege on a person that is conditioned or limited by law or that is applicable alike to persons of every sex, color, race, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation." *Id.* § 51(c); *see Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142, 1172 (1991).

"A policy that is neutral on its face is not actionable under the Unruh Act, even when it has a disproportionate impact on a protected class." *Turner*, 167 Cal. App. 4th at 1408 (citing *Harris*, 52 Cal. 3d at 1172–1173; *Belton v. Comcast Cable Holdings*, LLC, 151 Cal. App. 4th 1224, 1238 (2007)). Instead, "[A] plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act." *Harris*, 52 Cal. 3d at 1175. Additionally, "[t]he Unruh Act *does* indirectly penalize a failure to grant reasonable accommodations in Civil Code section 51, subdivision (f)." *Turner*, 167 Cal. App. 4th at 1410 (emphasis original).

### 2. Application of Law to Facts

Plaintiff's Complaint does not allege that Defendants intentionally discriminated against him. Furthermore, Plaintiff appears to concede in his Opposition that his Unruh Act claim is viable only because he states a claim under the ADA.[14] However, because Plaintiff has stated a claim under the ADA against each defendant, Defendants' Motion is denied as to Plaintiff's Unruh Act claim. *See* Cal. Civ. Code § 51(f).

## IV. CONCLUSION

For the reasons stated, Defendants' Motion is DENIED.

IT IS SO ORDERED.

Dated: July 25, 2012

JOSEPH C. SPERO
United States Magistrate Judge

---

[14] It is uncertain what Plaintiff's citation to *Hankins v. El Torito Rests.*, 63 Cal. App. 4th 510 (1998) is intended to support. Plaintiff states the case dealt with a "facially neutral" policy "that resulted in unlawful discrimination." Opposition at 9. The court in *Hankins*, however, found that the plaintiff there actually alleged intentional discrimination. *Hankins*, 63 Cal. App. 4th at 518. That is not the case here.